Filed 7/1/26  Gertler v. Omni Hotels Management Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JULIE GERTLER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION et al.,<br><br>    Defendants and Respondents. | D087136<br><br>(Super. Ct. No. CVPS2303573) |

APPEAL from a judgment of the Superior Court of Riverside County, Manuel Bustamante, Jr., Judge.  Reversed.

Easton & Easton, Brian W. Easton, Mani S. Navab, and Gabriel M. Mendoza, for Plaintiff and Appellant.

Pettit Kohn Ingrassia Lutz & Dolin, Damian M. Dolin, Michael F. Colbert, David M. Wise and Annie F. Fraser, for Defendants and Respondents.

Plaintiff Julie Gertler[1] injured her left knee when she slipped and fell on a wet and sloping walkway at the Omni Rancho Las Palmas Country Club (country club), a resort operated by defendants Omni Hotels Management Corporation and Omni RPL Holdings, Inc. (collectively, Omni). At the time of Julie's injury, she had a tennis membership at the country club and was on her way to the tennis courts.

Julie sued Omni for negligence and premises liability. The trial court granted summary judgment in favor of Omni, determining that Julie waived her claim because Richard, Julie's husband and ostensible agent, signed a release of liability on Julie's behalf. But Omni failed to meet its initial burden on its motion for summary judgment because it did not establish an agency relationship between Julie and Richard based on either ostensible authority or subsequent ratification. Because Omni's affirmative defense was premised on the existence of an agency relationship, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Richard purchased a tennis membership for his wife Julie so she could play at Omni's country club. On the tennis membership application and agreement form, he listed Julie as the applicant and provided her contact information. On the last page of the form, Richard printed and signed Julie's name on the line for "member signature." He also printed and signed his own name. The membership agreement form contained a release of liability provision, which stated in part, "I agree to release and shall hold [Omni]

---

[1]    Because Julie Gertler and her husband, Richard Gertler, share the same last name, we will refer to them by their first names for clarity and intend no disrespect.

harmless, from and with respect to any loss, cost, or expense … arising out of or in any way connected with my membership and any/or from any act or omission of [Omni]."

After Julie fell and injured her knee on a walkway at the country club, she sued Omni. Omni moved for summary judgment based on the theory that the express waiver and release of liability contained in the membership agreement barred Julie's lawsuit against it. The trial court granted Omni's motion, finding that Julie was bound by the release under agency principles.

## DISCUSSION

" ' 'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) " ' " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Regents, supra*, 4 Cal.5th at p. 618.) "A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. [Citations.] If the defendant does so, the burden then shifts to the plaintiff to produce admissible evidence demonstrating a triable issue of material fact as to the claim or defense."

3

(*Aton Center, Inc. v. United Healthcare Insurance Company* (2023) 93 Cal.App.5th 1214, 1229, citing Code Civ. Proc., § 437c, subd. (p)(2).)

## A. *The Law of Agency*

"An agent has such authority as his principal actually or ostensibly confers upon him." (*Snyder v. Redding Motors* (1955) 131 Cal.App.2d 416, 421; see Civ. Code, § 2315.) An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to reasonably believe in error that another possesses the authority to act on the principal's behalf. (*Tomerlin v. Canadian Indem. Co.* (1964) 61 Cal.2d 638, 643; see Civ. Code, §§ 2300, 2317.) A purported agent's acts or statements on their own "can never establish ostensible authority; there must be some conduct on the part of the alleged principal." (*Asplund v. Selected Investments in Financial Equities, Inc.* (2000) 86 Cal.App.4th 26, 46 & fn. 12; *Petersen v. Securities Settlement Corp.* (1991) 226 Cal.App.3d 1445, 1452 (*Petersen*).)

A principal may also confer authority by "a subsequent ratification." (Civ. Code, § 2307; see *Harris v. Seidell* (1934) 1 Cal.App.2d 410, 413.) "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.) "A purported agent's act may be adopted expressly or … by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred." (*Ibid.*) Through the doctrine of ratification, a principal may ratify the forgery of his signature by his agent. (*Id.* at p. 74.)

4

Omni asserts a complete defense to the action by claiming Julie is bound by the release of liability provision in the membership agreement that Richard signed. During Julie's deposition, she testified her husband paid for her tennis membership, and she was happy to learn she was a member. She also testified she did not personally sign the agreement and did not authorize Richard to sign it on her behalf. Additionally, Julie said she was not aware of the release prior to the incident and her husband had never signed a document of a similar nature on her behalf before. Although these facts are uncontroverted, Omni argues Julie is bound by the agreement based on agency principles. We conclude Omni failed to show the existence of an agency relationship between Julie and Richard and, consequently, failed to meet its initial burden on the motion for summary judgment.

**B.** ***Omni Failed to Establish the Existence of an Ostensible Agency Relationship***

Omni's ostensible agency theory fails because there is no evidence showing that Omni actually believed that an agency existed between Julie and Richard. "The person dealing with the agent must do so with belief in the agent's authority." (*Hill v. Citizens Nat'l Trust & Sav. Bank* (1937) 9 Cal.2d 172, 176 (*Hill*).) Omni provided no evidence that it believed Julie authorized Richard's execution of the membership agreement. Omni only argues that it accepted the membership agreement *as if it had been signed by Julie* because there was no reason for it to suspect Julie did not sign the release on her own behalf. Omni additionally relies on Richard's conduct— the fact he signed Julie's name, printed her name, and failed to inform Omni he was not authorized to do so. But Richard's conduct alone cannot prove ostensible agency. Ostensible authority " 'must be based *upon acts or*

5

*declarations of the principal* and not the conduct or representations of the alleged agent.' " (*Petersen, supra*, 226 Cal.App.3d at p. 1452.)

Although Omni did not provide evidence showing it believed in Richard's agency authority, Omni nonetheless argues that Julie's conduct caused Omni to believe Richard was authorized. They point to the fact that Julie played tennis at the country club, attended instructive tennis clinics, and was happy to be a member. But Omni could not have reasonably understood Julie's participation in tennis activities as evidence that she authorized Richard to release Omni for its future negligent conduct. Although Julie and Richard are married, and much less evidence is required to establish an agency relationship between spouses, courts will not imply agency from the marriage relation alone. (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 589.) Here, Omni failed to identify any act or omission by Julie that caused Omni to reasonably believe Julie gave Richard authority to release Omni from future liability. (See *Hill, supra*, 9 Cal.2d at p. 176.)

## C. *Omni Failed to Establish That Julie Ratified Richard's Execution of the Release on Her Behalf*

We turn next to whether Julie subsequently ratified Richard's execution of the release even if he did not originally have authority. Again, Omni points to Julie's participation in the tennis activities at the country club. A principal may ratify the agent's act "by accepting or retaining the benefit of the act, with notice thereof." (Civ. Code, § 2310.) Additionally, a "principal cannot split an agency transaction and accept the benefits thereof without the burdens." (*Reusche v. California Pacific Title Ins. Co.* (1965) 231 Cal.App.2d 731, 737.)

6

But Omni's evidence of purported ratification is insufficient because there is no evidence Julie knew that Richard signed a release of liability on her behalf. "[A] ratification, to be binding, must have been made with full knowledge of all the material facts." (*Promis v. Duke* (1929) 208 Cal. 420, 427.) It is uncontroverted that Julie learned of the membership agreement and first became aware of the release only *after* her injury. Without knowing that Richard executed the membership agreement containing the release, Julie could not choose to ratify it by playing tennis.

Omni relies upon *Stegeman v. Vandeventer* (1943) 57 Cal.App.2d 753 (*Stegeman*) to support its argument that Julie ratified the execution of the membership agreement and release when she reaped the benefits of the membership by playing tennis at the country club. *Stegeman,* however, is readily distinguishable from the case before us. In *Stegeman*, the husband was a real estate broker and jointly owned property with his wife. (*Id.* at p. 755.) They sold their property to the plaintiff, but the husband misrepresented the property's value, and the plaintiff subsequently sued the couple for fraud. (*Id.* at pp. 755–757.)

Although the trial court entered judgment in favor of the wife, the appellate court reversed, determining that the wife was liable for fraud along with her husband because she ratified her husband's misrepresentations. (*Stegeman*, *supra*, 57 Cal.App.2d at pp. 758–760, 762.) "[S]he not only performed acts which were necessary to a consummation of the fraud but still retains much of the benefits growing out of it." (*Id.* at p. 759.) Specifically, the wife signed a deed that bore a misrepresentation of the selling price and accepted consideration worth much more than the property she sold to the plaintiff in exchange. (*Ibid.*) The circumstances in *Stegeman* were such that

7

a reasonable person in the wife's position would have known something was amiss.

Indeed, "where ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable man upon inquiry, he may be held to have ratified despite lack of full knowledge." (*Volandri v. Hlobil* (1959) 170 Cal.App.2d 656, 659.) Unlike the wife in *Stegeman*, there is no basis to infer that Julie should have known something untoward occurred. The record reflects that she knew her husband paid for her tennis membership and that because he did so, she could play tennis. It provides no basis to infer that she knew or should have known Richard waived her right to sue Omni for its future wrongdoing. Indeed, Julie's uncontroverted testimony is that she did not know about the membership agreement or release before her injury.

Omni points to Julie's deposition testimony as conclusively demonstrating that she ratified Richard's execution of the release. She was first asked, "Was your husband authorized to sign on your behalf that you were aware of?" She responded, "I didn't authorize him because I didn't know about it." Defense counsel followed up, "Would he have been authorized if you were under the impression that you needed to sign a waiver in order to be members at the country club?" Julie responded, "No. I would have signed it had I known."

The parties dispute the proper interpretation of Julie's second response. Omni contends it means Julie would have agreed to the release to become a member of the country club.[2] Julie, on the other hand, emphasizes

---

[2]     The trial court also noted Julie's response to this question in its decision.

her unambiguous "No" answer in the first sentence of her response as categorically denying that Richard would have been authorized to sign the release even had she known it was required for club membership.

As we have already noted, our interpretation of the evidence offered in support of and in opposition to a motion for summary judgment is guided by settled legal principles. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [we "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party"].) Here, there is an inherent tension between the first and second sentences of Julie's deposition testimony if the second sentence is construed in the manner Omni advocates. Julie's statement that, "*I* would have signed it had I known," particularly following her "No" answer, merely underscores her earlier statement that she would not have delegated her decision on the matter to her husband; it does not reveal whether she would have agreed to the terms of the release. (Italics added.) As the moving party on the summary judgment motion, it was Omni's responsibility to further address the tension in Julie's response and clarify her intent rather than simply relying on what it claims is "the plain meaning of the words."

We conclude Omni failed to show that the release Richard signed was binding on Julie.[3] As a result, it did not satisfy its initial burden of demonstrating a conclusive defense to Julie's negligence claim.

---

[3]    Because we resolve this appeal based on agency principles, we have no occasion to address Julie's additional arguments regarding the proper scope of the release.

9

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to the trial court to vacate its order granting the motion for summary judgment and to enter a new order denying the motion. Appellant is entitled to recover her costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

KELETY, J.

10